UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BURT SHEARER TRUSTEE, as trustee of the SHEARER FAMILY LIVING TRUST, on behalf of Nominal Defendant, NATIONAL HEALTH INVESTORS, INC., <br> Plaintiff, <br><br> v. <br><br> W. ANDREW ADAMS, ROBERT A. McCABE, JR., ROBERT T. WEBB and TED H. WELCH <br><br> Defendants, <br><br> and <br><br> NATIONAL HEALTH INVESTORS, INC., <br><br> Nominal Defendant. | No. 3:11-00099 <br> Judge Sharp |

## MEMORANDUM

This is a shareholders derivative action brought by Plaintiff Burt Shearer, as Trustee of the Shearer Family Trust, on behalf of Nominal Defendant National Health Investors, Inc. ("NHI"). Named as Defendants are four members of NHI's Board of Directors -- W. Andrew Adams, Robert A. McCabe, Jr., Robert T. Webb and Ted H. Welch (the "Individual Defendants").

Essentially, Plaintiff alleges that, for close to a decade, NHI, with the knowledge and approval of the Individual Defendants, engaged in an illegal financial scheme against Care Foundation of America, Inc. In doing so, the Individual Defendants allegedly breached their fiduciary duties by knowingly orchestrating and carrying out a scheme to manipulate Care Foundation and take advantage of its non-profit status for NHI's own use and benefit. By way of this litigation, Plaintiff claims to be "exercising his statutory right as a stockholder to do what NHI's Board of Directors (the 'Board') will not: recover on behalf of the Company the damages that

1

resulted from the Individual Defendants' breach of fiduciary duty and to correct the deficiencies in the Company's internal controls that allowed the misconduct to occur." (Docket No. 29 at 1).

This is not the first time the Court has been presented with substantially the same allegations of misconduct. In <u>Shearer v. Adam, *et al.*</u>, Case No. 3:09-0991 (M.D. Tenn. 2009) ("<u>Shearer I</u>"), Judge Haynes entered an Order on September 21, 2010, dismissing Plaintiff's Corrected Amended Complaint with prejudice because "Plaintiff did not serve an adequate pre-suit demand upon NHI as required by Maryland law." (Case No. 3:09-0991, Docket No. 36).

The dismissal of the action in <u>Shearer I</u>, serves as the basis for the Individual Defendants' "Motion to Dismiss for Claim Preclusion" (Docket No. 17) in this case. In addition to that Motion, NHI has filed a "Motion to Dismiss the Complaint because the Plaintiff Lacks Standing" (Docket no. 16). Both Motions have been fully briefed by the parties (Docket Nos. 18, 19, 29, 31, 33 & 34). Having considered the record and the arguments of the parties, the Court will grant the motion to dismiss on the grounds of claim preclusion, and deny as moot the motion to dismiss for lack of standing.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

In <u>Shearer I</u>, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff did not plead an adequate pre-suit demand under Maryland law. In response to the motion, Judge Haynes observed that, "[u]nder Maryland law, for a shareholder derivative action, an adequate pre-suit demand is a substantive requirement," and that the "purpose of the shareholder's demand requirement is to prevent abuse of the derivative remedy and to avoid unwarranted intrusion on the corporate board's presumptive control of the corporation, as well as the waste of corporate assets on ill-advised litigation." (Case No. 3:09-0991, Docket No. 36 at 5-6). Judge Haynes ruled Plaintiff

2

failed to show an adequate pre-suit demand because "the demand fails to state facts about the knowledge, role, intentions, or actions of any individual NHI directors, or whether a NHI director received any benefit from the alleged wrongdoing." (Id. at 10). Judge Haynes also rejected Plaintiff's allegation that NHI "'completely ignor[ed]' Plaintiff's demand" because "NHI's counsel notified Plaintiff's counsel of the factual deficiency in Plaintiff's demand," "NHI's counsel requested the specific facts for Plaintiff's assertion '[s]o that NHI's board may properly evaluate and respond to Mr. Shearer's demand,'" and "Plaintiff never responded to NHI's request." (Id.). Accordingly, Judge Haynes entered the September 21, 2010 Order dismissing the action with prejudice, and final judgment was entered the following day.

Subsequently, Plaintiff filed a "Motion for Clarification" of the Order in which he sought "clarification that the dismissal of the action 'with prejudice' is intended only to preclude Plaintiff from proceeding with the action based on the February 3, 2009 Demand, and is not intended to and does not preclude Plaintiff from making a new demand on the Board, and, if appropriate, filing a new action based on the new demand." (Case No. 3:09-0991, Docket No. 39 at 2). Although Plaintiff submitted a proposed form of Order which would specify "that the September 21, 2010 Order is not intended to and does not preclude Plaintiff from making a new demand on the Board of Directors of National Health Investors, Inc.," (Id., Docket No. 39-1), Judge Haynes did not enter that Order. Instead, in a handwritten marginal Order penned on Plaintiff's "Motion for Clarification," Judge Haynes wrote: "This Motion is GRANTED. This action was dismissed with prejudice." (Id. Docket No. 40). Plaintiff did not appeal that ruling, or the final judgment that had been entered.

After dismissal of Shearer I, Plaintiff sent NHI a new demand letter dated October 11, 2010. Plaintiff concedes that this new "Demand was based on the same misconduct alleged in the February

3

3, 2009 Demand," but contends "it was patently different from the first demand in that it laid out in greater detail the Individual Defendants' wrongdoings against Care Foundation." (Docket No. 29 at 9-10).

In response to the new demand, the Board passed a resolution on November 19, 2010 which appointed a Special Committee to investigate Plaintiff's contentions, even though, in its view, the claims and assertions in the most recent demand were the same as those underlying Shearer I. After an investigation, the Special Committee recommended that it would not be in NHI's best interests to further pursue the claims made in Plaintiff's October 22, 2010 demand, and the Board later accepted that recommendation. This case – Shearer II – followed.

Based upon the foregoing procedural history, the Individual Defendants move to dismiss this action on res judicata grounds. Noting that the Complaint in this action is essentially identical to the Corrected Amended Complaint in Shearer I (except it alleges Plaintiff made a new pre-suit demand to NHI's board on October 11, 2010), the Individual Defendants insist this action must be dismissed because a valid pre-suit demand is a substantive requirement under Maryland law for derivative actions, and Shearer I was dismissed with prejudice precisely because Plaintiff repeatedly failed to meet Maryland's demand requirements for derivative actions.

## II. LEGAL DISCUSSION

A federal court sitting in diversity applies the law of the state in which it is located in determining the application of res judicata. Ventas, Inc. v. HCP, Inc., 647 F.3d 291, 303 (6th Cir. 2011). "Tennessee recognizes the traditional doctrine of res judicata, which is 'a claim preclusion doctrine that promotes finality in litigation[.]'" Calaway ex rel. Calaway v. Schucker, 395 Fed. Appx. 251, 254 (6th Cir. 2010) (quoting, Lien v. Couch, 993 S.W.2d 53, 55 (Tenn. Ct. App. 1998)).

4

Thus, "[t]he state of Tennessee bars under res judicata 'all claims that were actually litigated or could have been litigated in the first suit between the same parties.'" Hutcherson v. Lauderdale County, 326 F.3d 747, 758 (6th Cir. 2003) (quoting, Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark, 586 S.W.2d 825, 826 (Tenn. 1979)).[1]

Tennessee law provides that "'[p]arties asserting a res judicata defense must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the same parties or their privies, and (4) that both proceedings involved the same cause of action.'" Gerber v. Holcomb, 219 S.W.3d 914, 917 (Tenn. Ct. App. 2006) (citation omitted). Here, there is no doubt but that a court of competent jurisdiction rendered the judgment in Shearer I, and that Shearer I and Shearer II involve the same parties or their privies. What is disputed is whether the judgment in Shearer I was a final judgment on the merits and/or whether both Shearer I and Shearer II involved the same cause of action.

As a preliminary matter, the granting of a motion to dismiss for failure to state a claim is a final judgment on the merits. This is so under Tennessee's version of Fed. R. Civ. P. 12(b)(6), see, Rampy v. ICI Acrylics, Inc., 898 S.W. 196, 208 (Tenn. Ct. App. 1994) ("a dismissal for failure to state a claim under T.R.C.P. 12.02(6) is a dismissal on the merits"), and under Sixth Circuit and Supreme Court precedent. See, Pratt v. Ventas, Inc., 365 F.3d 514, 522 (6th Cir. 2004) (quoting, Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981)) ("A 'dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits," and is

---

[1] As the Sixth Circuit in Hutcherson noted, the doctrine of "[r]es judicata refers only to the preclusion of claims that have once been litigated or could have been litigated—also known as claim preclusion, merger, or bar," whereas, "'[a] second doctrine, the preclusion of issues that have once been decided, is called collateral estoppel." Hutcherson, 326 F.3d at 758 n.3. However, like many other jurisdictions, Tennessee courts often use "res judicata" in a broader sense as a "'general term referring to all of the ways in which a judgment will have a binding affect on another[.]'" Id. (citation omitted).

5

therefore done with prejudice").

In response to the Motion to Dismiss on res judicata grounds, Plaintiff argues that "the issue the Court should scrutinize for claim preclusion is not whether the dismissal of Shearer I was a 'final judgment on the merits,' but rather whether the different issues of law and fact raised by the two actions involving separate demands constitute the same action." (Docket No. 29 at 12). While the Court agrees with that the critical issue in this case is whether the present actions involves different issues of law and fact than those raised in Shearer I, the Court disagrees with Plaintiff's ultimate contention that the separate demands make the cases different for purpose of res judicata in light of the particular procedural circumstances of this case.

As Plaintiff concedes, Tennessee has rejected the "primary right" approach for determining whether a cause of action is the same for purposes of res judicata, in favor of the "transactional standard." Creech v. Addington, 281 S.W.3d 363, 379 (Tenn. 2009).[2] "Under the Restatement standard, 'the concept of a transaction is ... used in the broad sense,' and 'connotes a natural grouping or common nucleus of operative facts.'" Id. (quoting, RESTATEMENT (SECOND) OF JUDGMENTS, § 24 cmt. b). Further, because the court in Creech "noted that the term 'transaction' for the purposes of res judicata 'is intended to be analogous to the phrase 'transaction or occurrence' as used in the Federal Rules of Civil Procedure,'" courts in Tennessee "look to federal case law for guidance," and the Sixth Circuit has held that "claims arise out of the same transaction or occurrence if 'the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence

---

[2] Although the Tennessee Supreme Court adopted the "transactional approach" because it was "more predictable and easier to apply than the 'primary right test," its adoption was "not without limitations" in light of that court's long-standing practice of "balancing the doctrine's benefits of efficient proceedings and finality and consistency of judgments with the dangers of unduly limiting the rights of litigants to have all of their claims heard on merits." Id. at 380. Thus, in applying the test, courts should act "with sensitivity to the facts of each proceeding." Id.

6

would support or refute both claims.'" Roberts v. Vaughn, 2009 WL 160891 at *7 (Tenn. Ct. App. June 10, 2009) (quoting, Creech, 281 S.W.3d at 379 & Saunders v. First Nat'l Bank & Trust Co., 936 F.2d 273, 277 (6th Cir. 1991)).

In this case, the claims Plaintiff pursues arise out of the same transaction or occurrence as that in Shearer I, and the issues of law and fact are the same. Just as in Shearer I, Plaintiff contends the Individual Defendants allegedly breached their fiduciary duties by knowingly orchestrating and carrying out a scheme to manipulate Care Foundation and take advantage of its non-profit status for NHI's own use and benefit, and, just as in Shearer I, Plaintiff seeks to recover on behalf of the Company the damages that resulted from the Individual Defendants' alleged breach of fiduciary duty and to correct the deficiencies in the Company's internal controls that allowed the misconduct to occur. In fact, Plaintiff concedes that the October 11, 2010 demand which underlies Shearer II is the very same misconduct alleged in the February 3, 2009 demand which served as the basis for the derivative action in Shearer I.

In an effort to avoid the fact that Shearer I and Shearer II are virtually identical causes of actions, Plaintiff argues that "[a]lthough the demands allege similar transactions with respect to the Individual Defendants' misconduct, the issues in the two actions are totally different because the complaints are based on different demands." (Docket No. 29 at 12). That is,

> . . . [T]he sole issue in Shearer I was whether or not Plaintiff's complaint pled an adequate demand.
>
> In stark contrast, the demand allegations in Shearer II are materially different. Shearer II alleges that in response to the October 11, 2010 Demand, the Board formed a Special Committee to review and make a recommendation. [Complaint] ¶241. Plaintiff pleads different facts from Shearer I in that he alleges facts demonstrating that the Special Committee was not independent and failed to act reasonably or in good faith. [Id.] ¶¶242-251. In short, the issues to be decided in Shearer II are based on whether the Special Committee acted independently and in good faith in refusing

7

> the October 11, 2010 Demand. Id. In light of the fact that Shearer II is based on a separate demand and the Board's investigation and refusal thereof, neither the facts, issues to be determined, nor the evidence are the same as in Shearer I. Thus, res judicata simply does not apply.

(Id. at 12-13).

Maryland, which supplies the substantive law for Plaintiff's action, requires as a precondition to suit that a plaintiff make a demand upon the corporation prior to filing a derivative action, see, Werboswky v. Collomb, 766 A.2d 581, 618-19 (Md. App. 2001), and the demand requirement for derivative actions is generally understood to be substantive, not procedural. See, Kamen v. Kemper Finan. Serv's Inc., 500 U.S. 90, 96-7 (1991). Judge Haynes recognized those requirements in Shearer I and found, "[u]nder Maryland law, for a shareholder derivative action, an adequate pre-suit demand is a substantive requirement," and concluded that Plaintiff "did not serve an adequate pre-suit demand upon NHI as required by Maryland law." (Case No. 3:09-099, Docket No. 37 at 5 & 10).

Failure to fulfill a precondition to suit can serve as a basis for later claim preclusion. The Sixth Circuit decision in Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003) illustrates the point.

There, the district court found that plaintiff's failure to fulfill a condition precedent to suit – specifically the failure to pursue an informal resolution with an EEO counselor prior to filing suit against the United States Postal Service under the Rehabilitation Act – constituted a decision on the merits for claim preclusion purposes and barred a subsequent suit. In upholding the decision, the Sixth Circuit wrote:

> The district court's analysis rests on sound legal authority. It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite. . . . This Court has held that a federal employee's administrative obligation to consult with an EEO counselor within a

8

>particular time period is a precondition to filing suit subject to equitable tolling, waiver and estoppel. . . . The distinction between a jurisdictional prerequisite and a condition precedent is of significant analytical import because a dismissal for lack of subject matter jurisdiction is not a dismissal on the merits for claim preclusion purposes. . . .
>
>It further is well-established that conditions precedent are similar to statutes of limitations. . . . Moreover, a dismissal for failing to comply with a statute of limitations is a decision on the merits for claim preclusion purposes. . . . Therefore, the district court did not make an impermissible leap in analogizing a dismissal for failing to fulfill a condition precedent to a dismissal arising from a failure to comply with the statute of limitations.

Id. at 819-20 (internal citations omitted).

Mitchell is useful by analogy because, just as the exhaustion of administrative remedies is a condition precedent to a discrimination suit, the tender of a sufficient demand is a substantive prerequisite to a derivative suit under Maryland law. This is not to say that every finding of a failure to comply with a condition prerequisite is a decision on the merits for claim preclusion purposes, and (though not cited by Plaintiff) there are cases which hold that "[w]hile dismissal of a derivative suit for failure to plead demand or excuses is of course a type of dismissal for inadequate pleading, it is also a dismissal for failure to accomplish a precondition, which is a failure that may be remedied by the time the second suit is filed." In re Sonus Networks, Inc., 499 F.3d 47, 61 (1st Cir. 2007).

In Mitchell, the Sixth Circuit made clear that there "are certain condition precedents where, although the party may not have fulfilled the condition prior to filing suit in the district court, he or she may . . . fulfill the condition, and re-file the civil action," and, "[t]herefore, not all decisions finding that a plaintiff failed to fulfill a condition precedent are readily comparable to a finding that a party failed to comply with the statute of limitations." Mitchell, 343 F.3d at 820-21 (footnote omitted). This is because the Sixth Circuit "repeatedly has cautioned that a decision on the merits is one that signifies the "death knell" of the litigation." Id. at 821. "The underlying principle of this

9

'death knell' language is that a dismissal on the merits is one that permanently forecloses a party from further advancing a claim or defense." Id.

In this case, Judge Haynes could have dismissed Shearer I without prejudice. See, Richelson v. Yost, 738 F.Supp.2d 589, 602 (E.D. Pa. 2010) (citing In re Sonus for the proposition that the failure to make an adequate demand may be cured, and dismissing derivative action for lack of a sufficient demand without prejudice). However, Judge Haynes explicitly dismissed Shearer I with prejudice, and, if there was any question as to whether he intended to bar subsequent suit based upon the same facts even in light of a new demand, that question was answered when he declined to sign Plaintiff's proposed order, which would allow Plaintiff to re-file, and reaffirmed that the dismissal was with prejudice. If Plaintiff had an issue with the dismissal being with prejudice, that is a matter which he should have taken up on appeal because the "'[r]es judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong[.]'" Palkow v. CSX Transp., Inc., 431 F.3d 543, 550 (6th Cir. 2005) (quoting, Moitie, 452 U.S. at 398); see, Napier v. Director, Office of Workers' Compensation Programs, 999 F.2d 1032, 1041 (6th Cir. 1993) ("under traditional concepts of res judicata, the final denial of [plaintiff's] claim would bar relitigation of his eligibility for benefits even if the final decision was wrong").[3]

Moreover, "[t]he central purpose of claim preclusion is to prevent the 'relitigating of issues that were or could have been raised in [a prior] action.'" Mitchell, 343 F.3d at 824 (quoting, Moitie, 452 U.S. at 398). Here, the corporate decisions about which Plaintiff now complains could have

---

[3] So that the record is clear, the Court recognizes that the dismissal in Mitchell was a "death knell" because the time-limit for pursuing counseling had run and, therefore, plaintiff was "permanently foreclosed from meeting the condition" precedent. Mitchell, 343 F.3d at 821. Judge Haynes' dismissal with prejudice and subsequent confirmation of the prejudicial nature of the dismissal clearly served as the "death knell" in this case because it was a final decision which was not challenged on appeal.

10

been raised and litigated in Shearer I by serving an adequate demand as required by Maryland law prior to suit, particularly since NHI's requested more information, a request that was ignored by Plaintiff. See, Richelson, 738 F.Supp.2d at 599-60 (citations omitted) ("plaintiff had a 'duty' to respond to the corporation's request for more information and that, by filing a derivative suit instead, 'plaintiff . . . hindered the demand requirement's important purpose of allowing corporations to govern themselves to the extent possible, avoiding unnecessary judicial involvement in the internal affairs of business organizations, and discouraging harassing strike suits'"). Even when the sufficiency of the demand was challenged by Defendants' January 8, 2010 "Motion to Dismiss for Failure to Make Adequate Pre-Filing Demand," Plaintiff responded by filing an Amended Complaint, and, thereafter, a Corrected Amended Complaint. In none of those filings did Plaintiff show the fulfillment of the condition precedent to filing a derivative action required by Maryland law.

### III. CONCLUSION

On the basis of the foregoing, the Court will enter an Order granting the Individual Defendant's Motion to Dismiss for Claim Preclusion, denying the Nominal Defendant's Motion to Dismiss for Lack of Standing, and dismissing this action with prejudice.

*/s/ Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE